Morris & Co. v. Starkweather & Shepley, Inc., 186 Ill. App. 59.

---

## Morris & Company et al., Appellees, v. Starkweather & Shepley, Inc., Appellant.

### Gen. No. 19,249.

1. INSURANCE, § 67*—*when recovery from broker for breach of agreement to procure insurance in certain companies not warranted.* In an action by several plaintiffs to recover a sum alleged to have been paid by plaintiffs to the defendant as part of the premiums due on certain fire insurance, it was alleged that the defendant agreed to procure the insurance for plaintiffs in certain companies but that it procured the insurance in such companies and another company in violation of the agreement. *Held* that a judgment for plaintiffs could not be sustained, it appearing that a certain brokerage company to whom the money was paid was the agent of the plaintiffs to procure the insurance and that such company prior to the time the policies were issued, and prior to the time the premium was paid, was informed of the names of the companies that had issued the insurance.

2. INSURANCE, § 49*—*when proposition of law that broker acts as agent for assured is correct.* In an action against an insurance broker to recover premiums paid where the broker procured insurance in companies not authorized by his principal, the following proposition of law was held to be a correct statement and applicable to the case:  "The court holds as a proposition of law, that where a person or a corporation authorizes a broker to secure in-

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

surance, that in procuring such insurance the broker is the agent of the assured; and if a binder is issued upon such application, and prior to the time that the policies are issued, and prior to the time that the premium or any part thereof is paid, the broker is informed of the names of the companies that have issued the binder and that are thereafter to issue the policies, then the knowledge of the broker as to the names of such companies is the knowledge of the assured."

Appeal from the Municipal Court of Chicago; the Hon. ISIDORE H. HIMES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed. Opinion filed April 21, 1914.

BATES, HARDING, EDGERTON & BATES, for appellant.

M. W. BORDERS, LUTHER M. WALTER and NORMAN G. COLLINS, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court.

This suit was brought to recover the sum of $5,880 (and interest) alleged to have been paid by the plaintiffs on April 15, 1910, to the defendant as part of the premiums on certain fire insurance aggregating $700,-000 which, it is alleged, the defendant agreed to procure for the plaintiffs covering certain merchandise and stock in branch houses of the plaintiffs, which insurance the defendant failed to procure.

The contention of the plaintiffs is that the policies to be secured by the defendant were to be renewals of policies issued the previous year to the plaintiffs upon the property in question by the "London Lloyds Company" and the "National British and Irish Millers." The abstract does not give accurately the substance of the record in respect to the matter. The policies of the previous year were not produced, nor were copies of them, and the court permitted secondary evidence to be given tending to show that the policies of the previous year ran to one or more of the plaintiffs, but whether jointly or severally to the copartnership of

Nelson Morris & Company, Edward Morris, individually, Morris & Company, a corporation, and the Fairbank Canning Company, a corporation, is not made clear.

Leo A. Loeb, upon whose testimony plaintiffs largely rely, stated that he "ordered a renewal of $700,000 of insurance that expired on the stock of the Fairbank Canning Company located in their markets throughout the United States of America," thus indicating that the Canning Company was the only one interested.

Negotiations for the new insurance were carried on by R. H. Hunter, acting as an insurance broker. He at one time had been in the general employ of Nelson Morris & Company, but in 1909 and 1910 his connection with the plaintiffs was that of an insurance broker merely, having access, however, as he testified, to all papers, books of account, etc., of plaintiffs, so far as the same related to insurance matters. In placing the insurance several brokers other than Hunter were concerned, namely Adolph Loeb & Sons, Inc., of Chicago, the defendant (Starkweather & Shepley, Inc., of Baltimore), and Morgan, Lyons & Company, of London, England.

Hunter testified that he requested Loeb & Sons to have a renewal of the policies effected by the defendant, and the defendant, at the instance of Loeb & Sons, cabled the London brokers. It appears that Morgan Lyons & Company replied to defendant, "Fairbanks O. K." This fact was communicated to Loeb & Sons, March 25, 1910, and by the latter to Hunter soon thereafter. The cablegram appears to have been treated by all the parties interested in the transaction on this side of the Atlantic as a "binder" of the insurance. What is described as a "cover note" was subsequently received by the defendant by mail from the London brokers, from which it appeared that the new insurance had been placed by them not wholly

62    APPELLATE COURTS OF ILLINOIS.

Morris & Co. v. Starkweather & Shepley, Inc., 186 Ill. App. 59.

with the two insurers who it is said had issued the policies of the year before, but with them and a third insurer, namely, the Omnium Insurance Company. Burrows, the Chicago representative of the defendant testified that he gave this "cover note" to Leo A. Loeb, of Loeb & Sons, on or about April 6th, 1910, and that Loeb & Sons then knew that the policies when received would be those of the three insurers heretofore mentioned, in about equal proportion as to amounts. This testimony was not denied by Loeb, who stated merely that he had no recollection of having received the "cover-note," but that he could not testify positively that he did not receive it. Nor does Loeb deny Burrows' statement that on April 6, 1910, the fact of the Omnium Company being one of the insurers was discussed by him and Burrows; nor the further statement of Burrows that Loeb said he would take the matter up with Hunter. Hunter testified that he did not remember receiving the "cover note," but would not say positively that he did not receive it.

The total amount of the insurance premiums was $8,050. On April 15, 1910, Hunter gave Loeb & Sons his check for $5,439, which he testified was in payment of the first instalment of the premium, less his commission of $441. He further testified that plaintiffs refused to accept the policies issued by the three companies when the same were received from London and tendered to the plaintiffs some weeks after he had made the payment referred to.

Judgment was rendered in the Municipal Court in favor of the plaintiffs for the sum of $6,630, being the sum of $5,880 and interest thereon.

The following proposition of law tendered by the defendant was held by the trial court:

"The court holds as a proposition of law, that where a person or a corporation authorizes a broker to secure insurance, that in procuring such insurance the broker is the agent of the assured; and if a binder is issued upon such application, and prior to the time

that the policies are issued, and prior to the time that the premium or any part thereof is paid, the broker is informed of the names of the companies that have issued the binder and that are thereafter to issue the policies, then the knowledge of the broker as to the names of such companies is the knowledge of the assured.''

The court was of opinion, however, that this proposition did not apply to the facts in the case. In our opinion the proposition was a correct statement of the law. *Lycoming Fire Insurance Co. v. Rubin*, 79 Ill. 402. We think also that it applied to the facts in this case. If it be assumed that the plaintiffs jointly paid Hunter the sum of $5,880 (of which there is no proof); that Hunter paid to Loeb & Sons $5,439 (which is not disputed); that Loeb & Sons paid nothing to the defendant (which is also not disputed); that an insurance broker acts as agent for the insurer in collecting the premium; that policies had been issued in the prior year to the plaintiffs jointly (which is not in our opinion sustained by competent evidence), we still are unable to find justification for the entry of the judgment. As stated in the proposition of law approved by the trial court, the broker in procuring insurance acts as agent of the assured. If he procures insurance in companies not authorized by his principal, the principal may refuse to accept the policies when tendered and recover the premium from the broker if the same has been paid to the broker by the principal. The theory of the plaintiffs, as we understand it, is that although Hunter was a broker, and acted solely in that capacity so far as this transaction is concerned, the payment by him of a portion of the premium to Loeb & Sons made the brokerage corporation, Loeb & Sons, agent of plaintiffs in procuring the insurance, and thereupon Loeb & Sons, as such broker, also became the agent of the defendant to collect the premium. In this view of the case, which we do not fully share, if the corporation, Loeb & Sons, was ad-

vised at the time it received payment from the plaintiffs, through Hunter, that the insurance had been placed with the three insurers, its knowledge of that fact became the knowledge of its principals, the plaintiffs. If Loeb & Sons thus became the broker and agent of the plaintiffs, and violated its instructions, the obligation to repay the plaintiffs the portion of the premium advanced rests upon Loeb & Sons and not upon the defendant. As heretofore stated, the record does not disclose that the plaintiffs, or any of them, paid Hunter $5,880 or any other sum of money. If, however, he accepted payment from them after seeing the "cover note" and thus knowing how the insurance had been placed, action would in our opinion lie against him.

The judgment is reversed.

*Reversed.*