Paul H. Altrocchi and James F. Downey, III, Plaintiffs-Appellees and Separate Appellants, v. William P. Hammond, III, Defendant-Appellant, and Fidelity and Casualty Company of New York, Defendant-Appellee.

Gen. No. 11,122.

Second District, First Division.

April 16, 1958.

Rehearing denied May 17, 1958.

Released for publication May 17, 1958.

John J. Treacy, of Chicago, for appellant.

Pritchard, Heath, Montgomery & Pennington, of Chicago (George R. Hooper, and David M. Sloan, of counsel) for plaintiffs-appellees and separate appellants.

Dixon & Seidenfeld, of Waukegan (Glenn K. Seidenfeld, and Bruce E. Kaufman, of counsel) for Fidelity and Casualty Company of New York, defendant-appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Paul H. Altrocchi and James F. Downey, III, by their amended complaint sought to recover a judgment declaring that the defendant, William P. Hammond, III, who was an insurance broker, was the insurer of Altrocchi's liability arising out of an automobile accident which occurred on October 10, 1954, or, in the alternative, that the defendant, Fidelity and Casualty Company of New York, be declared the insurer of the plaintiff, Altrocchi. The defendants answered, and the issues made by the pleadings were submitted to the court for determination, resulting in a judgment declaring that the defendant, Hammond, was liable to the plaintiffs for any damages which they sustained as a result of an automobile accident which occurred on October 10, 1954, within the limitations of $5,000 for bodily injury to one person and $10,000 for bodily injury to all persons and within the limit of $5,000 for property damage. The trial court held Fidelity and Casualty Company not liable and dismissed the proceeding as to it. To reverse this decree, defendant, Hammond, appeals, and to reverse that part of the

decree which dismissed the amended complaint as to the defendant, Fidelity and Casualty Company, plaintiffs, Altrocchi and Downey, prosecute a separate appeal.

From the pleadings and evidence, it appears that Altrocchi, who was a medical student at Harvard University, twenty-three years of age, purchased on Saturday, September 18, 1954, a 1950 Dodge automobile from the Holmes Motor Company in Highland Park, Illinois. He informed the salesman from whom he bought the car that he wanted liability insurance upon it, and the salesman thereupon contacted defendant, Hammond, who was an insurance broker and also an agent for the State Farm Insurance Company. Hammond, as requested by the car salesman, came to the auto agency and there met Altrocchi and told him that he was agent for State Farm Insurance Company and Altrocchi told him he "wanted coverage starting right then and continuing at least for a year." Hammond explained to Altrocchi he could not insure him through the State Farm Insurance Company, because of his age and his status as a college student but could get coverage through the Illinois Assigned Risk Plan and according to the testimony of Altrocchi, as abstracted, this is what occurred: "Mr. Hammond said that insurance through this plan would not go into effect for a few days, he was not sure exactly when. I told him I would not drive the car without insurance effective immediately and that I would leave the car there until I arranged for other insurance the following Monday. He told me not to worry, that he would cover me by the assignment. I said, 'Do you mean starting right now until the policy with the assigned risk is accepted or until you let me know they do not accept it?' He said, 'You are perfectly all right.' He guaranteed to me that I was covered, as well as others who might drive my car, until the assigned risk plan policy was issued or until he notified me to the contrary. He told

194

me the amount of the coverage was $5,000 each individual, and $10,000 each accident and $5,000 property damage. I gave him Travelers checks for $20 covering the assigned risk application for which he gave me a receipt. He did not give me a receipt covering the oral agreement to cover me until the assigned risk policy came through or until I was notified to the contrary. I took his word for it and trusted him. I drove my car away from there and did not hear from Mr. Hammond until October 14, 1954."

Mr. Hammond testified that upon this occasion Altrocchi told him he wished he could get immediate coverage and Hammond explained to Altrocchi that the assigned risk plan made his application subject to acceptance by the insurance company to which it was assigned; that Hammond thereupon called Blair Lloyd by phone, who was a friend of Hammond, and, as abstracted, this is what occurred: "I asked Lloyd about coverage for an under-age student otherwise ineligible for most companies, that he looked like a good risk from a family angle. I gave Lloyd the facts about Altrocchi that I had on the application and asked him if he could bind him and he said he could. There was no question about his ability to get fire and theft insurance and I wanted full coverage for him if he could get it for me. I went to Lloyd's house that afternoon and he completed the post card in my presence and asked me to mail it. . . . I mailed the application in question here and the post card at the same time on September 18th. . . . The letter I mailed to the Assigned Risk was never returned, it was in the regular business envelope, stamped and with the application forms and $20 enclosed."

An application with the blanks unfilled but similar to the one referred in the testimony of Mr. Hammond was offered and admitted in evidence upon the hearing and the postal card was produced upon the hearing and admitted in evidence. This card was addressed to

W. A. Alexander and Co., 135 South LaSalle Street, Chicago, post marked "Highland Park, September 18, 5:30 p.m., 1954," and is signed by G. Blair Lloyd, Broker. It directs Robert L. Frick to "effect coverage for the following: 'Insured; Paul L. Altrocchi, (6–3–31); address, 5318 Greenwood, Chicago 15, Illinois; amount ———; property to be insured, 1950 Dodge 4-door M-D34-264534, S-31603769; I will furnish balance of information by noon next working day.'" The evidence discloses that the Robert L. Frick whose name appears on this card was an underwriter for W. A. Alexander and Company.

Mr. Lloyd testified that he was the insurance broker who signed this card which was furnished him by W. A. Alexander and Company; that he had office space with W. A. Alexander and Company at 135 South LaSalle Street, Chicago; that his status was that of office broker and in return for placing business through the Alexander Agency he was given desk space and telephone service in its Chicago office. He further testified that when this card was stamped and mailed the agency was bound to the risk and coverage was in effect when the card was postmarked. This witness stated that he had a conversation with Hammond on September 18, 1954, but did not tell him that the binder would be good for any specified time and in answer to the question: "Did you tell Hammond that the binder would be good until notification was given to Hammond that the risk was rejected?" answered: "I don't know. I don't remember my exact words. I was home sick in bed. Hammond came to my house with the application. I told Hammond that because of the man's age and being a student there was a fifty-fifty chance whether a policy would be issued. However, Hammond had with him the application for the assigned risk. I filled out the post card in my bedroom and gave it to Hammond and told him to post

196

it. I never notified Altrocchi or Downey in any way that the risk was refused. I did notify Hammond. I called him at home on September 23, 1954, and told him that because of Altrocchi's age and occupation, being a student, the company refused to issue a policy. I told him that the binder had been in force several days longer than was usual because I had been sick at home. Hammond said that was all right because the assigned risk application was mailed on September 18 and that he should be hearing from them any day."

On September 30, 1954, Lloyd received the following office communication: "Dear Agent; In Re: Paul H. Altrocchi; In keeping with your instructions we have issued an automobile binder which will expire October 6, 1954," signed by W. A. Alexander and Company. Mr. Lloyd was surprised when he received this communication because a week previous—on September 23, 1954—he advised Hammond that Fidelity and Casualty Company would not issue a policy on this risk. Between October 1 and October 4, however, he testified that he had a telephone conversation with Hammond in which he told him of the receipt of the interoffice memorandum, dated September 30, 1954, and advised Hammond that the binder in connection with Altrocchi's insurance would expire on October 6, 1954; "that October 6 would be the end of it." That Hammond replied that it didn't make a particle of difference as the assigned risk was on it.

Upon the hearing, counsel for the Fidelity and Casualty Company stated to the court that his company had admitted by the pleadings that the post card was a binder and that the binder expired on October 6, and had the accident happened before October 6, 1954, the company would have paid the claim. This post card, therefore, when mailed by Hammond, constituted an insurance binder and provided temporary coverage by the Fidelity and Casualty Company for Altrocchi. This

197

post card binder did not, however, carry any expiration date and there was no conversation between Altrocchi and Lloyd concerning the length of time the binder was to be in effect.

The record further discloses that on October 10, 1954, plaintiff Downey, while driving Altrocchi's car with the latter's permission, became involved in an accident in the state of Vermont. Suit was filed by the injured parties against Downey and Altrocchi. A demand was made upon Hammond to assume the defense of this suit but Hammond refused. Subsequently the suit was settled by Altrocchi and Downey, who paid a substantial amount, together with attorney fees amounting to $1,122.07, in defending the litigation.

The day after the accident, October 11, 1954, Altrocchi phoned his uncle, Mr. Cooley, a lawyer in Chicago, and Cooley contacted Hammond, who, on October 14, 1954, wrote Altrocchi as follows: "I am writing you in response to the inquiry of Mr. Cooley regarding your auto liability insurance. For the first time in my experience, I have had a letter lost or gone astray. I wrote the Illinois Auto Assigned Risk Plan and they have no record of receiving the application which I sent in with the two travellers checks on the National City Bank of New York, serial numbers 009-836-127 and 009-836-128. I would suggest that you drop the bank a line and have them stop payment on the checks immediately and recover your funds from them however that is accomplished. I am enclosing duplicate application forms for re-application to the Assigned Risk plan for your signature and also fill in the information regarding the automobile. If you will return these in the envelope, I will see to it that they arrive at their proper destination without delay."

The trial court found, among other things, that on September 18, 1954, Altrocchi and Hammond entered

into a contract by the provisions of which Hammond undertook to provide immediate coverage for Altrocchi by a binder which would protect Altrocchi and any person driving his Dodge automobile with Altrocchi's permission until an automobile liability insurance policy could be secured by Hammond for Altrocchi, either through the insurance company issuing the binder, or by another insurance company under the assigned risk plan, or until such time as Altrocchi was notified that his application for a policy under the assigned risk plan had been rejected; that pursuant to this contract, Hammond obtained for Altrocchi on September 18, 1954, a temporary binder issued by defendant, Fidelity and Casualty Company, for automobile liability insurance in the amount of $5,000 per person and $10,000 per accident for bodily injury and $5,000 for property damage; that prior to October 10, 1954, this company rejected Altrocchi's application and cancelled the binder and so notified Hammond; that Hammond did not notify Altrocchi of this rejection and cancellation, nor did he take any steps in connection with his application for assigned risk plan insurance for Altrocchi; that it was Hammond's duty, under his contract with Altrocchi, to secure other automobile liability insurance for Altrocchi or to notify him of the cancellation of the binder and his inability to secure other insurance.

█ We have read the evidence, as abstracted, and in our opinion it sustains these findings of the trial court. What Hammond agreed to do was to provide Altrocchi and persons driving his car with his consent, insurance coverage until a liability policy could be secured or until Altrocchi was notified that his application for a policy under the assigned risk plan had been rejected. According to the evidence Hammond was advised by Lloyd on September 23, 1954, that Fidelity and Casualty Company had refused the risk. Ham-

199

mond was advised again by Lloyd between October 1 and October 4 that the binder he, Lloyd had been instrumental in procuring would expire on October 6, 1954. The binder was thus effectually cancelled. Hammond, however, did nothing. He neither followed up on Altrocchi's application which he, Hammond sent in to the assigned risk plan nor did he notify Altrocchi of the cancellation of the binder and made no attempt to secure any other insurance and never notified Altrocchi that he had no insurance after he, Hammond, knew the binder was no longer operative. By so doing he breached his undertaking with Altrocchi and the trial court so found.

An insurance binder which does not itself specify the terms and provisions of the policy applied for incorporates, as a matter of law, all of the terms and provisions of the policy for which application through the binder is made. A binder is in the nature of temporary insurance, and insurance coverage by its use is effected at once. In such preliminary contract, it will be presumed, in the absence of evidence to the contrary, that the parties contemplate such form of policy containing such conditions and limitations as are usual in such cases or have been used before between the parties to the binder. (Trichelle v. Sherman & Ellis, Inc., 259 Ill. App. 346.)

Based on this premise, the plaintiffs and Hammond insist that the only way Fidelity and Casualty Company could have cancelled the binder was to have given a five-day notice of cancellation directly to the insured, as provided by the terms of the policy for which Hammond applied. The provisions of the policy applied for pertaining to its cancellation applies only to the policy and does not govern the manner in which a binder might be cancelled. What we are dealing with here is not the policy which was applied for, but with the binder issued by Fidelity and Casualty Company.

200

Hammond was not an agent and did not represent Fidelity and Casualty Company. Altrocchi had no dealings with this company or with W. A. Alexander and Company or with Lloyd. All his conversations and dealings were with Hammond. It was Lloyd, acting at the request of Hammond who procured the issuance of the binder by Fidelity and Casualty Company. It was Altrocchi who clothed Hammond with authority to procure this insurance binder. It was Altrocchi who set Hammond in motion and authorized Hammond to act for him and Hammond was in fact Altrocchi's agent and clothed with authority to accept cancellation of the insurance binder. (Morris & Co. v. Starkweather & Shepley, Inc., 186 Ill. App. 59, 63; Tri-City Transportation Co. v. Bituminous Casualty Corp., 311 Ill. App. 610, 615; France v. Citizens Casualty Co., 400 Ill. 55, 58.)

The judgment of the trial court is sustained by the law and by the evidence found in this record and that judgment is affirmed.

Judgment affirmed.

SPIVEY and McNEAL, JJ., concur.