Lionel Bourdage, Fred Berglund, and Robert A. Trembly, Trustees of Insurance Survey Company, a Trust Organization, Plaintiffs-Appellees, v. Rifco Auto Leasing Co., an Illinois Corporation, Defendant-Appellant.

Gen. No. 50,205.

First District, Second Division.

December 21, 1965.

McCarthy, Witry, Lyon & McCarthy, of Chicago, for appellant.

Victor M. Theis, of Chicago, for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a summary judgment entered in the Circuit Court of Cook County, October 21, 1964. Appellant claims triable issues of material fact were present, making summary judgment improper.

The facts as shown by the pleadings and a deposition taken from James E. Lee, president of the appellant corporation, show that he was contacted in May, 1963, by Jerry Picha, representative of Central Mutual Insurance Company, with regard to the business' insurance

needs. Picha had known Lee for approximately five years and had sold insurance to him before while he was working as agent for another company. It appears that Central Mutual had never before written insurance on an automobile leasing company and needed further information of the nature of this business and the risks involved. It is said, however, that Picha knew enough about the business to give Lee a tentative figure on the total cost of the insurance, which figure is said to have been between $46,000 and $48,000. Appellees explain the delay in determining the actual premium by noting that the fleet of automobiles involved had approximately 250 vehicles; that the number of vehicles was not constant, and that there were changes in the number of lessees and the coverage required.

A meeting was held on June 18, 1963, at which were present Picha, officers of the appellant Rifco Auto Leasing Co. and representatives of Central Mutual. All parties agree that this meeting was held so that the prospective insurers could learn more about the automobile leasing business. According to Lee, nothing was said to him by any party concerning the rates to be charged on the insurance. He said, however, that there was a discussion of rates going on among others at the table. Since Rifco's insurance with its present carrier was to expire the next day, a binder was issued which read:

"Effective 12:01 A. M., June 19, 1963, we, the Insurance Survey Co., as agents for Central Mutual Insurance Co. of Van Wert, Ohio, bind coverage pending issuance of an Insurance Contract for Rifco Auto Leasing Co."

The appellee insurance company claims that at the time this binder was issued, an agreement for the sale of insurance had been entered into by the parties and all that remained was for the certificates of insurance to be drawn up. R. V. Rinard, an officer of Central Mutual

stated in his affidavit in support of summary judgment that a premium quotation was prepared and submitted at the conference of June 18. This was not contradicted by Lee's deposition which said that no quotation was submitted to him but stated that sheets of figures were being examined at the table by others present.

Lee stated that he explicitly made known to the representatives of Central that the binder was to be temporary insurance and that he intended to continue shopping around to see where he could make the best deal. It is admitted by all parties that on June 21, 1963, an accident involving one of Rifco's lessees was reported to Central Mutual and was settled by the insurance company. Rifco then cancelled the policy on July 3, 1963—15 days after the binder went into effect because it found it could buy insurance for less elsewhere.

The appellees claim that Rifco owes the insurance company premiums based on the so-called "short rate table." Computations on this table will result in a much higher premium than a pro rata computation from the table of annual rates. They argue that when a binder has been entered into by the parties, and said binder does not attempt to prescribe or restrict the terms of insurance but merely undertakes to give coverage and refers to the policy to be delivered thereafter, the obligations of the parties are according to the terms of the policy in ordinary use by the company. From this they argue that payment of a short rate premium is one of the conditions for cancellation by the insured of the policy referred to in the binder and in defining the obligations of the parties is entitled to equal recognition and enforcement with all other policy terms and conditions.

Rifco, on the other hand, contends that the binder issued by Central Mutual was intended by all parties to afford coverage only during the period that negotiations were being conducted regarding the terms of an insurance contract. Appellant asserts that the insurance

company knew it was negotiating with several other insurance companies and that they were fully aware that Rifco would place its insurance with the company which submitted the most favorable terms. Rifco contends that the cancellation provisions of an unissued insurance policy, the terms of which had not been agreed to nor submitted to defendant for acceptance, are not effective to charge the defendant at the higher premium rate for cancellation of a binder issued to cover only the period of negotiations between the parties.

It is clear that summary judgment can properly be given only when there is no issue as to any material fact. Di Leo v. United States Fidelity & Guaranty Co., 50 Ill App2d 183, 200 NE2d 405 (1964). The appellant claims that there was a material issue of fact which should have barred the rendering of a summary judgment. These questions of fact are, according to the appellant: 1) whether the right to cancel the policy was in any way affected by an insurance policy which, it has been alleged, was to be issued, 2) whether the insurance company knew Rifco planned to purchase insurance from the company which offered the most favorable rates, 3) whether the premium to be charged was to be based on the normal schedule or on the short rate table in the event Rifco chose to cancel, and 4) whether the damages sought by the appellants show the true amount due under the short rate table.

We feel that these questions are not material questions of fact but are, for the most part, questions of law. Was the right to cancel the policy in any way affected by an insurance policy which, it has been alleged, was to have been issued on the binder? The binder speaks of "coverage pending issuance of an Insurance Contract," which would indicate that the parties had settled on the contract. There is nothing in this binder about insurance pending *agreement* on a contract. The appellants, however, cite the case of Altrocchi v. Ham-

120

mond, 17 Ill App2d 192, 149 NE2d 646 (1958) for the proposition that the cancellation provisions of an insurance policy apply only to the cancellation of the policy and do not govern the rights of the parties upon cancellation of a binder. We feel that case to be distinguishable on its facts from the one at bar. There the purchaser of a used automobile sought to purchase insurance through a broker. The trial court in that case found that "Altrocchi and Hammond (the broker) entered into a contract by the provisions of which Hammond undertook to provide immediate coverage for Altrocchi by a binder which would protect Altrocchi and any person driving his Dodge automobile with Altrocchi's permission until an automobile liability insurance policy could be secured by Hammond for Altrocchi, either through the insurance company issuing the binder, or by another insurance company under the assigned risk plan that had been rejected; that pursuant to this contract, Hammond obtained for Altrocchi on September 18, 1954, a temporary binder issued by defendant, Fidelity & Casualty Company, for automobile liability insurance . . . ; that prior to October 10, 1954, this company rejected Altrocchi's application and cancelled the binder and so notified Hammond; that Hammond did not notify Altrocchi of this rejection and cancellation, nor did he take any steps in connection with his application for assigned risk plan insurance for Altrocchi; that it was Hammond's duty, under his contract with Altrocchi, to secure other automobile liability insurance for Altrocchi or to notify him of the cancellation of the binder and his inability to secure other insurance." Altrocchi v. Hammond, 17 Ill App2d 192, 198, 199, 149 NE2d 646, 650 (1958).

In that case, the court held that the insurance company had not accepted the insurance contract. The insurance contract applied for specified that the company could not cancel without giving the insured five days' notice. The court said that an insurance binder which does not itself

specify the terms and provisions of the policy applied for incorporates, as a matter of law, all of the terms and provisions of the policy for which application through binder is made. The court held, however, that the company was not bound by the cancellation provisions of the proposed insurance contract because it never at any time accepted the binder. The courts obviously will not hold a party bound by the terms of a contract it never accepted.

■  In the case at bar, it is clear that Rifco accepted the binder. It filed a claim under this binder and the insurance company settled on behalf of the auto leasing company.

It is recognized by both parties on appeal that there was a binding contract. The writing seems clear to us in indicating that Rifco had agreed to purchase insurance from Central Mutual Insurance Company. The basic question remaining is whether the fact that the amount of the premium to be paid was not set forth in the binder will prevent the insurance company from demanding a premium based on the short rate rather than on the standard rates for this type of coverage.

■ ■  The appellant claims it should not be held to the terms of a contract which it never accepted. It says it accepted the binder but not the underlying contract. With this proposition we cannot agree. As a general rule, when a person accepts a binder he accepts the terms of the underlying insurance contract. Altrocchi v. Hammond, supra. The contract in general use by the company stated that should the purchaser of the insurance cancel during the year his premiums were to be based on the short rate taken. Appellant is bound by such a provision.

■  This discussion has also disposed of the so-called question of fact concerning the use of the short rate schedule. As to whether the insurance company knew Rifco planned to purchase insurance from the company which offered the most favorable rates, this seems to us

to be a moot question when one accepts that the binder was indeed a binding contract between the parties. No matter what Rifco intended earlier, when it accepted the binder, it bought insurance from Central Mutual.

■ The only question remaining is whether the damages sought by the appellants show the true amount due under the short rate table. The original complaint asked for damages of $5,819.20; this was changed on a motion to amend the complaint to a claim for $6,444. The short rate table is in the record and the amount due under it is simply a matter of computation. The mere fact that the complaint stated the wrong amount originally due to a miscalculation does not raise a material question of fact.

■ We must also note at this point that the defense presented by Rifco in the court below was that there was not a binding contract between the parties. In this court, it has conceded the existence of a contract and merely contests the amount it owes. This alone is enough to dispose of the case, for a party is not permitted to change his theory of the case on appeal. Woman's Athletic Club of Chicago v. Hulman, 31 Ill2d 449, 202 NE2d 528 (1964). For the above reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.