MARY M. MRZLAK, Plaintiff-Appellee, v. ROBERT E. ETTINGER et al., d/b/a DEARBORN CLUB RESIDENCE FOR GIRLS, Defendants-Appellants.

(No. 58909;

First District (3rd Division)—January 23, 1975.

Jerome H. Torshen and Robert A. Skirnick, both of Torshen, Fortes & Eiger, Ltd., and Garretson & Santora, both of Chicago, for appellants.

George Groble, of Groble & Groble, of Chicago, for appellee.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

On August 8, 1967, plaintiff, Mary Mrzlak, while asleep in her room at the Dearborn Club Residence for Girls (hereafter referred to as Club), was assaulted and robbed by an unknown male assailant who allegedly obtained entry through the bathroom window of plaintiff's second-story room. Plaintiff brought this action against defendants Robert Ettinger and Harold Zimmerman, the owners and operators of the Club, and alleged that defendants were negligent in failing to exercise a high degree of care to maintain the premises in a safe condition so as to prevent an assault against the plaintiff, a paying guest.

The jury entered a verdict of $22,500 in favor of the plaintiff and defendants now appeal.

We affirm.

Defendants make the following contentions on review: (1) that defendants are not liable to plaintiff as a matter of law because there is no duty to protect against unforeseeable, independent criminal acts of third persons; (2) even if the defendants owed a duty to protect plaintiff against unforeseeable, independent criminal acts, and that duty was breached, such breach was not the proximate cause of plaintiff's injury; (3) that plaintiff was contributorily negligent as a matter of law; (4) that it was error for the court to instruct the jury that the defendants owed plaintiff a high degree of care; (5) that the closing argument of plaintiff's counsel exceeded the bounds of proper debate and prevented defendants from receiving a fair trial; and (6) that the verdict of $22,500 is unreasonable and excessive and the result of the jury's passion or prejudice.

■■ Defendants' first contention is that they are not liable to plaintiff as a matter of law because there is no duty to protect against unforeseeable, independent criminal acts of third persons. Whether or not defendants have a duty to protect plaintiff from independent, intervening criminal acts of third persons depends upon whether such acts are foreseeable. Even cases cited by defendants acknowledge this basic rule. (See *Mancha v. Field Museum of Natural History* (1972), 5 Ill.App.3d 699, 283 N.E.2d 899; *Moore v. Yearwood* (1960), 24 Ill.App.2d 248, 164 N.E.2d 215.) Defendants argue that the evidence shows that the criminal act was unforeseeable, that the Club had no knowledge of previous incidents and that, indeed, there were no previous incidents. We believe these contentions to be without merit. In the case at bar the evidence presented showed that there were taverns in the vicinity of the Club and that immediately next door to the Club there was a rooming house. Joel

Carothers, called as a witness by the plaintiff, testified that there were three attempted break-ins at the Club and further stated that she informed Mr. Zimmerman, co-owner of the Club, of each of these attempts. Another witness, Sharon Matts Hancon, testified that she thought there were two attempted break-ins at the Club in the spring of 1967. Yet another witness, Millie Conlon, testified that someone tried to get in the hotel by throwing a rock through the powder room in the main lounge. Furthermore, Robert Ettinger, the other co-owner of the building, testified that the manager of the building might have told him about attempts to break into the building. In light of such evidence we believe the question of foreseeability was properly a question for the jury and will not overturn the jury's decision on appeal.

Defendants next contend that even if the Club did owe and breach a duty to the plaintiff to guard against intervening criminal acts, the breach of that duty was not the proximate cause of plaintiff's injury. This specific issue was discussed at length by the Illinois Supreme Court in *Ney v. Yellow Cab Co.* (1954), 2 Ill.2d 74, 117 N.E.2d 74. In *Ney,* the defendant cab company's employee left his cab unattended with the engine running, in violation of the Uniform Traffic Act. A thief stole the cab and while in flight collided with the plaintiff's vehicle causing property damage. In discussing the intervening criminal acts the court stated as follows:

> "* * * Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, anymore than a particular act by this or that individual. The rule applies *a fortiori* to criminal acts. The intervention of a criminal act, however, does not necessarily interrupt the relation of cause and effect between negligence and an injury. If at the time of the negligence, the criminal act might reasonably have been foreseen, the causal chain is not broken by the intervention of such act. 38 Am. Jur. 728-9." 2 Ill.2d 74, 79, 80, 117 N.E.2d 74, 78.

In *Green v. Welts* (1970), 130 Ill.App.2d 600, 605, 265 N.E.2d 188, 191, the same issue was considered as follows:

> "* * * In cases such as this, the intervening act is always wrongful and is not normal or reasonable conduct under the circumstances. That is the reason the question arises as to whether there is a break in the causal chain. The question of whether or not this intervening conduct was within the range of reasonable anticipation and probability is the type of factual question for the jury to determine. Questions which are composed of qualities

sufficient to cause reasonable men to arrive at different results, inferences and conclusions, should not be determined as matters of law. *Ney v. Yellow Cab Co.*, supra 83, 84; *Kinsch v. Di Vito Const. Co., Inc.* (1964), 54 Ill.App.2d 149, 154, 155; *Marquardt v. Cernocky* (1958), 18 Ill.App.2d 135, 145, 146."

We believe that the evidence presented at trial concerning previous attempts to break into the Club, defendants' knowledge of such attempts, and the general character of the neighborhood in which the Club was located, properly made the issue of proximate cause one for the jury. As stated in *Ney, supra*:

"Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function. *Bailey v. Central Vermont Railway Co.*, 319 U.S. 350." (2 Ill.2d 74, 84, 117 N.E.2d 74, 80.)

Defendants' next contention is that plaintiff's failure to lock her window constitutes contributory negligence as a matter of law. The evidence presented at trial concerning whether or not there are locks on the bathroom window is conflicting. Mr. Ettinger testified that at the time of the incident the bathroom had two locks, that he tested both locks on the morning after the incident, and that both were functional. Defendants' exhibit no. 3, a photograph of the bathroom window taken shortly after the assault, shows what appears to be two locks on the window. Plaintiff testified that she did not see any locks on the window, and Officer Hayslip, who arrived shortly after the incident, testified that he saw no security devices on the window.

■■ Furthermore, plaintiff was told by the Club manager, Miss Sills, that the Club was a safe place to stay. There is nothing in the record to indicate that the plaintiff received any instructions concerning locking the windows. As stated in *Breslin v. Bates* (1973), 14 Ill.App.3d 941, 945, 303 N.E.2d 807, 811, "What evidence constitutes contributory negligence is ordinarily a question of fact, and each case must be determined ac-

cording to its own facts and circumstances." In the case at bar, the jury in answer to a special interrogatory on plaintiff's contributory negligence stated that the plaintiff was not contributorily negligent. In light of the conflicting evidence concerning the existence of locks on the window, the fact that the manager of the Club told plaintiff that the Club was a safe place to stay, and the fact that plaintiff received no specific instructions concerning locking her windows, we cannot say as a matter of law that the plaintiff was contributorily negligent.

Defendants next contend that it was reversible error for the court to instruct the jury that the Club owed a high duty of care to the plaintiff. Defendants argue first, that a hotel owes its guest a duty of reasonable or ordinary care and, second, that there was no innkeeper-guest relationship established between defendants and plaintiff.

■■ Defendants cite numerous cases in support of the proposition that a hotel owes its guests a duty of ordinary care. However, only one of these cases, *Walden v. Chelsea Hotel Co.* (1949), 337 Ill.App. 292, 85 N.E.2d 861, involved a situation where a guest at a hotel was assaulted by a third party. We believe the better result of law is that where an assault upon a guest by a third party is involved, the hotel is held to a high degree of care. This particular rule was enunciated as follows in *Danile v. Oak Park Arms Hotel, Inc.* (1964), 55 Ill.App.2d 2, 8-9, 203 N.E.2d 706, 709:

> "The appellant next claims that the Court below was in error in instructing the jury that the Hotel owed the appellee a high degree of care to protect her from harm. The instruction is supported by *Fortney v. Hotel Rancroft, Inc.*, 5 Ill.App.2d 327, 125 N.E.2d 544 (1955). There the court distinguished cases where injuries resulted from defective or dangerous conditions existing in the premises of the innkeeper and cases where the injury arose from the positive action of one person against another. Thus, if a guest of a hotel slips on a defective staircase, the hotel is subject to ordinary care, but if the guest is assaulted by an employee of the hotel or by a third person, the hotel may be held to a high degree of care. We take note that some cases in this jurisdiction have held a hotel to reasonable and ordinary care, but with the exception of *Walden v. Chelsea Hotel Co.*, 337 Ill.App. 292, 85 N.E.2d 861 (1949), none of these dealt with a situation where a guest was assaulted. We hold that in these circumstances, a reasonable degree of care is a high degree of care. We find no reversible error in this instruction."

As stated in *Fortney v. Hotel Rancroft, Inc.* (1955), 5 Ill.App.2d 327, 335, 125 N.E.2d 544, 548:

"A guest, who is either asleep in his room or about to enter his room, should not be subjected to the risk of an assault by a stranger. A guest has a right to rely upon the innkeeper doing all within his power to avoid or prevent such an assault, and to that end should be required to exercise a high degree of care."

In the instant case, plaintiff was assaulted by a third party. Therefore, we believe that the court was not in error in instructing the jury that defendants owed the plaintiff a high degree of care.

■■ We also believe that defendants' contention that there was no innkeeper-guest relationship established between defendants and plaintiff to be without merit. Defendants contend in their brief that although the Club was admittedly a hotel, plaintiff's status was that of a boarder and not a guest. It is our belief that this specific point was not raised in the trial court and was therefore waived. It is true that defendants denied each and every allegation of Count V of plaintiff's complaint which alleged that defendants had a high duty of care to plaintiff while she was a paying guest in the hotel. However, nowhere in the record of the proceedings at trial or in defendants' post-trial motion does the issue of whether the plaintiff was a guest as opposed to a boarder appear. Essential to our decision on this particular point is the discussion in the chambers of the trial court judge concerning the jury instruction as to the duty of care the hotel owed. At this discussion counsel for both plaintiff and defendants and the trial court judge discussed only the issue of whether or not the Club was a hotel. It was evident from the discussion that the theory adopted by all parties was that, on the basis of the facts in this particular case, if the Club was a hotel, then the plaintiff was a guest. At this discussion, defendants argued only that the Club was not a hotel. To consider defendants' argument on appeal that although the Club was admittedly a hotel, but that the plaintiff was a boarder and not a guest would be unfair to the plaintiff and to the trial court. It is a well-established rule that an appellate court does not have authority to consider a matter not passed upon by the trial court. (*Trisko v. Vignola Furniture Co.* (1973), 12 Ill.App.3d 1030, 1034, 299 N.E.2d 421, 424; *Ray v. City of Chicago* (1960), 19 Ill.2d 593, 602, 169 N.E.2d 73, 78; *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill.App.2d 105, 109-10, 185 N.E.2d 97, 99.) Furthermore, " '[A]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute * * * them had they been presented at the trial.' " (*Hux v. Raben* (1967), 38 Ill.2d 223, 225, 230 N.E.2d 831, 832.) It is a basic rule of law that a party is not permitted to change his theory of a case on appeal. *Woman's Athletic Club v. Hul-*

*man* (1964), 31 Ill.2d 449, 202 N.E.2d 528; *Bourdage v. Rifco Auto Leasing Co.* (1965), 66 Ill.App.2d 116, 213 N.E.2d 77.

Defendants next contend that certain comments in plaintiff's closing argument appealed to the passion of the jury, had no relation to the case and therefore deprived defendants of a fair trial. Defendants first argue that early in his argument, plaintiff's counsel set the tone for what was to be an excursion into sex, rape and murder which was nowhere supported in the record.

The relevant facts as testified to by the plaintiff indicate that when the assailant entered plaintiff's room he put a gun to her head and said, "Be quiet, or else I will shoot." The plaintiff then started to scream and her assailant began to hit her on the head with a gun. Plaintiff continued to scream, started to kick her feet and tried to get up off the bed. The assailant then pulled her down and began to strangle her. Plaintiff then lost consciousness. Upon regaining consciousness, the plaintiff found that her pajama bottoms and sanitary pad were off. Plaintiff told the investigating officer, Officer Deady, that she had been raped and a police report was made out to that effect. Later, after a sperm test proved negative, the police report was reclassified from rape. During cross-examination plaintiff stated that she was making no allegation that she was raped.

Defendants cite in support of their argument counsel's characterization of the sign on the awning in front of the Club which read "Dearborn Club Residence for Girls" as an invitation "to anybody   *   *   *, any maniac, any thief, any burglar   *   *   *   that in this building are women, in fact, girls." Defendants further refer to counsel's statement that the assailant told plaintiff "Don't scream, I will kill you." In actuality, the assailant said, "Be quiet, or else I will shoot." Defendants also cite counsel's remark, "She was probably raped. Her pants were torn off. Her sanitary napkin was torn off," and counsel's statement at the close of his closing argument when he stated, "Let's stop these girls and women being killed in hotels and motels." Plaintiff's counsel also referred to the outside area of the Club as "vulnerable by the use of a prowler, burglar or rapist   *   *   *," and stated that the girls in the Club had "no family probably."

■■   We believe the references to rape were fair comments based on the evidence. The plaintiff testified that she was found with her pajama bottoms and sanitary pad off. This is physical evidence of rape, even though the sperm test was negative. "Attorneys have broad latitude during closing argument to draw reasonable inferences and conclusions from the evidence." (*Johnson v. Chicago Transit Authority* (1973), 11 Ill.App.3d 16, 20, 295 N.E.2d 573, 576; see *Goldstein v. Hertz Corp.* (1973), 16 Ill.App.3d 89, 305 N.E.2d 617.) Consistent with this wide latitude and

in light of the fact that plaintiff's pajama bottoms and sanitary pad were off, we find the references to rape to be fair comments.

Counsel's statement that the assailant told plaintiff "Don't scream, I will kill you" was essentially what the assailant told plaintiff and constitutes no error. The other statements that defendants complain of we find to be incorrect, but not so prejudicial as to have deprived defendants of a fair trial.

Defendants argue further that counsel's statements in closing argument concerning plaintiff's medical condition also went beyond the bounds of proper argument. The following statements made by plaintiff's counsel concerning plaintiff's medical condition are cited by defendants as unsupported by the record: "she was in a state of shock in the hospital"; "her jaw doesn't work right anymore, it clicks all the time and it is out of line"; that plaintiff "would say she had psychological help"; that "Mary Mrzlak * * * was going to be injured mentally and physically the rest of her life"; and finally that plaintiff "suffered more than a minor scalp wound."

■■ It is true that some of these statements are not exact statements of plaintiff's injuries. However, plaintiff did spend 4 days in the hospital and 1 month in bed at home immediately following the incident. Plaintiff testified that after the incident her jaw was at an angle and bruised, that she could not chew her food very well because her jaw would start cracking, and that she was weak and dizzy and was afraid of everything. It required seven stitches to close the wound in her scalp, and plaintiff testified that after the incident she had nightmares and could not sleep. Plaintiff also stated that she could not look up or move her head to the left. In August of 1969, 2 years after the incident, plaintiff testified that she was still suffering from the same symptoms. We do not feel that counsel's comments on plaintiff's injuries are so far removed from the injuries actually sustained to constitute reversible error. Furthermore, the trial court, in his instructions to the jury, properly instructed the jury to disregard statements which had no proper basis in the evidence. As a result we do not feel that counsel's comments on plaintiff's injuries were so prejudicial as to require a new trial.

Defendants also urge that certain comments made by plaintiff's counsel in his closing argument invited the jury to speculate about matters which were not in evidence and which had no bearing on the facts in the instant case. While not listing these final comments complained of by defendants specifically in this opinion, we have carefully considered them and do not feel that they are cause for reversible error.

■■ Plaintiff's counsel's comments in closing argument and especially defendants' contention that the cumulative effect of these comments was

to prejudice the jury, have given us cause for reflection. However, while we do not recommend this type of argument, we see nothing in the argument which is cause for a new trial. As stated in *Johnson v. Cunningham* (1969), 104 Ill.App.2d 406, 412, 244 N.E.2d 205, 208:

> "It is necessary to consider the trial as a whole to determine if a party has been denied his constitutional right to a fair trial by the misconduct of the other litigant or his counsel. The trial court is, of course, in a unique position to make this determination since it has heard all the testimony, all of the argument, observed the parties and their counsel and their effect on the jury. For this reason the sound rule exists that the question rests within the sound discretion of the trial court and will not be disturbed unless it is clear that the court has abused that discretion. West Chicago St. R. Co. v. Annis, 165 Ill. 475, 46 N.E. 264; Owen v. Willett Truck Leasing Corp., 61 Ill.App.2d 395, 402, 209 N.E.2d 868; Eizerman v. Behn, supra."

Moreover, "* * * '[t]he character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed his duty and properly exercised the discretion vested in him' * * *." *Galluccio v. Hertz Corp.* (1971), 1 Ill.App.3d 272, 280, 274 N.E.2d 178, 184.

● 11 In the present case, counsel for defendants in his closing argument had an opportunity to rebut most of the comments which he cites as prejudicial. Furthermore, the trial court in its instructions to the jury specifically instructed the jury to disregard comments of counsel not based upon the evidence. Moreover, the trial court was in a better position to evaluate the cumulative effect of these comments on the jury. The trial court did not see fit to grant a new trial, and we cannot say that in so doing the trial court abused its discretion.

As stated in *Bruske v. Arnold* (1969), 44 Ill.2d 132, 139, 254 N.E.2d 453, 457:

> " '[T]he ultimate question on review is not whether a trial was scrupulously free from error, but whether there was error which operated to the prejudice of the appealing party or unduly affected the outcome below. (*Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 118.)' "

We have carefully examined the record in the present case and find nothing which prejudiced the defendants or unduly affected the outcome in the trial court.

■■ Defendants' final contention is that the $22,500 verdict is the result of plaintiff's counsel's improper argument to the jury and that based on

the evidence a remittitur is required. We see nothing which constitutes reversible error in counsel's closing argument and believe that in light of plaintiff's injuries previously mentioned in this opinion the verdict of $22,500 is not excessive. Thus, no remittitur is required.

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.