(No. 32697.—

HELEN C. NEY, Appellee, *vs.* YELLOW CAB COMPANY,
Appellant.

*Opinion filed January 20, 1954.*

JESMER & HARRIS, and LEO S. KARLIN, both of Chicago, for appellant.

CHARLES D. SNEWIND, of Chicago, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The First District Appellate Court has granted this appeal on the ground of importance. The precise question here presented has never been passed upon by this court and there appears to be a conflict of opinion in the Appellate courts of this State.

The Appellate Court here affirmed the trial court's judgment fixing liability on the defendant for violation of a section of the Uniform Traffic Act. The plaintiff charged that defendant, by its servant, negligently permitted its taxicab to remain unattended on a Chicago street without first stopping the engine or locking the ignition or removing the key, contrary to a section of said act. The undis-

puted facts reveal that a thief stole the taxicab and while in flight ran into plaintiff's vehicle causing property damage. Defendant's motion to dismiss the complaint was based on the theory that the acts or omissions of the defendant did not constitute actionable negligence, nor the proximate cause of the damage. Briefly stated, plaintiff contended that the defendant's violation of the statute was negligence and the proximate cause of the damage.

The statute in question, section 92 of article XIV of the Uniform Traffic Act, provides: "(a) No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, or when standing upon any perceptible grade without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway. (b) No person shall operate or drive a motor vehicle who is under fifteen years of age." Ill. Rev. Stat. 1953, chap. 95½, par. 189; Jones Ann. Stat. 85.221.

The defendant takes the position that this particular statute is not an antitheft measure but is a traffic regulation, the violation of which could impose no liability on the owner or operator of the vehicle for the misconduct of a thief, for the reason that, under such circumstances, the violation of the statute is not actionable negligence in that the misconduct is neither negligence with relation to the resulting injury, nor its proximate cause. The plaintiff, on the other hand, contends that the statute is a safety measure for the benefit of the public; that its violation is *prima facie* evidence of negligence; and that reasonable persons might reasonably foresee that its violation could result in the consequences which occurred here. The plaintiff further contends that irrespective of the statute there would be a common-law liability under the same circumstances, and that in either event the questions of negligence and proximate cause are, under the facts alleged and admitted here, questions of fact and not questions of law.

The First District Appellate Court in *Ostergood* v. *Frisch,* 333 Ill. App. 359, held, with one Justice dissenting, that there was a liability under similar circumstances. The Third District Appellate Court in *Cockrell* v. *Sullivan,* 344 Ill. App. 620, held there was no liability. Thereafter, in the present case, *Ney* v. *Yellow Cab Co.,* 348 Ill. App. 161, the First District court again held that liability existed.

A repetitious review of the cases and decisions of the foreign jurisdictions cited in the parties' briefs will serve no good purpose, as our Appellate Courts have already done so in a most scholarly manner. Suffice it to say here that the majority rule seems to hold there is no liability while the minority rule holds there is. Various distinctions, qualifications and limitations have been pointed out by both plaintiff and defendant in criticism of the cited cases. We have carefully studied the reasoning of our Appellate courts and the courts of the other jurisdictions, in the light of these distinctions, and conclude that the issue presented requires our determination of the following questions: (a) What was the legislative intention? (b) Is the violation of the statute the proximate cause of the injury? (c) Is the act of the thief an intervening, independent, efficient force which breaks the causal connection between the original wrong and the injury?

Labeling of the statute does not solve the problem. Defendant urges that the statute is a traffic regulation and not an antitheft measure, and from this premise reasons to a conclusion of nonliability. It seems to argue that if it were an antitheft measure liability would attach in this case. However, the Massachusetts court construed this type of provision as being an antitheft measure but found the injury to the plaintiff not within the harm intended to be prevented. (*Sullivan* v. *Griffin,* 318 Mass. 359, 61 N.E. 2d 330; 35 Minnesota Law Review 81.) There is other punitive legislation in this State aimed at crime prevention and we doubt that it could earnestly be contended that this

provision is, solely, another such measure. We think the key to the construction of the statute with regard to the legislative intention appears in the statute itself. The requirement that the brakes be set and the wheels turned to the curb on a grade is no material theft deterrent. The second subparagraph of the section prohibiting persons under fifteen years of age from operating a motor vehicle indicates to us that the legislature was thinking about the danger to the public in permitting persons lacking in experence, judgment, knowledge and maturity to operate such vehicles. We cannot but conclude that this entire section is a public safety measure. This being so, what harm did the legislature foresee and attempt to prevent by prohibiting the leaving of an unattended motor vehicle with the key in the ignition? The motor vehicle with the key in its ignition in itself could obviously do no harm.

Consequently, there enters into our consideration the question of foreseeability as to intervention of outside agencies not under the control of the person in charge of the motor vehicle. The drawing of lines of demarcation in problems of cause and effect is often difficult in the study of formal logic and these difficulties are not minimized in the field of jurisprudence. We cannot say that the legislature intended to distinguish between certain types of outside agencies without expressing such distinction. Such a distinction would be too tenuous a ground to serve as a basis for decision in view of the broad general sweep of the statutory language employed. The legislature has here used clear and express terms making it the duty of persons in charge of motor vehicles to do certain acts upon leaving their vehicles unattended. The motivation of such legislation is not the State's desire to punish but rather its interest in public welfare for protection of life, limb and property by prevention of recognized hazards.

The violation of the statute is *prima facie* evidence of negligence under the prevailing rule of this State. (*John-*

son v. *Pendergast,* 308 Ill. 255; *Stewart* v. *United States,* 186 Fed. 2d 627.) This in itself creates no liability. The injury must have a direct and proximate connection with the violation of the statute before liability will be held to exist. It is the existence of this cause and effect relationship which makes the negligence of the defendant actionable.

Where an independent agency intervenes, the solution of the problem becomes aggravated. The rules are without substantial contradiction and are universally applicable, but their practical application yields varying and contradictory results. In *Neering* v. *Illinois Central Railroad Co.* 383 Ill. 366, we stated: "What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act." In *Johnston* v. *City of East Moline,* 405 Ill. 460, we declared: "An intervening and efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. [Citations.]"

A further problem is presented when the independent agency is an illegal or criminal act. Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, anymore than a particular act by this or that individual. The rule applies

*a fortiori* to criminal acts. The intervention of a criminal act, however, does not necessarily interrupt the relation of cause and effect between negligence and an injury. If at the time of the negligence, the criminal act might reasonably have been foreseen, the causal chain is not broken by the intervention of such act. 38 Am. Jur. 728-9.

The doctrine of proximate cause was subjected to a thorough study and analysis in the case of *Palsgraf* v. *Long Island Railroad Co.* 248 N.Y. 339, 162 N.E. 99. Plaintiff's injury there was sustained when defendant's guards attempted to assist a passenger hurriedly boarding one of its trains and dislodged a package he was carrying. The package contained fireworks which exploded upon falling, causing a scale several feet away, but near plaintiff, to fall upon her. The guards had no knowledge of the contents of the package. A divided court, with three justices dissenting, held there was no liability. Justice Cardozo's majority opinion is based upon the doctrine of relative rights, declaring that although the defendant may be negligent as to one person he still might not be negligent as to another. That a person might suffer injury would not make the negligence of the defendant actionable. That doctrine is one of comparative degree and has general judicial acceptance. If the guards in the *Palsgraf case* had known the package contained explosives, then their negligence would have been found to be actionable under the majority view.

The law of probable cause holds that an injury which is the natural and probable consequence of an act of negligence is actionable and such an act is the proximate cause of the injury. The injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either a remote cause, or no cause whatever of the injury. An injury that results from an act of negligence but that could not have been foreseen or reasonably anticipated as its

probable consequence and that would not have resulted from it had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. (59 A.L.R. 1264.) Justice Andrews, in his dissent in the *Palsgraf case,* poses some interesting hypothetical examples which point up the practical difficulties confronting the application of cause-and-effect laws in injury cases. Justice Cardozo profoundly there stated: "Life will have to be made over and human nature transformed before prevision so extravagant can be accepted as the norm of conduct, the customary standard to which behavior must conform. * * * The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury." Since the decision in the *Palsgraf case* in 1928, the course of events in the world has done a great deal to make life over. What might have been regarded as fanciful, imaginary and conjectural a quarter of a century ago are today matters of common acceptance. Atomic and thermonuclear power, television, jet propulsion, guided missiles, electronics, antibiotics and many other advancements and discoveries in science were unheard of in the lay world of not too long ago. Likewise, many problems confronting the public and the authorities in respect to traffic regulation and control result from a new mechanized age in which speed is the dominant factor.

The common law has established itself in the history of jurisprudence because of its flexibility in its recognition of and adaptation to changing times and mores; and, as adopted by our legislature, "is a system of elementary rules and of general declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions and the exigencies and usages of the country." (*Amann* v. *Faidy,* 415 Ill. 422; *Kreitz* v. *Behrensmeyer,* 149 Ill. 496.) The increase in population and num-

ber of motor vehicles owned and operated in this country in the past few years is well known. The increase of casualties from traffic accidents is a matter of common knowledge and concern. The incidence of automobile thefts and damages and injuries resulting from such larcenous escapades has accordingly increased. Juvenile delinquency has reached proportions alarming to everyone. Three major wars during the lifetime of this generation have had their effect upon the mental attitudes, not only upon those who endured the physical suffering and mental anguish, but upon all our society. Comparative regard and disregard for the rights and property of others have not been unaffected. Automobiles, once considered a luxury, are now considered by many to be a necessity. The man who once walked a mile now drives a block. The speed and power of automobiles have increased to the extent that safety experts are now showing keen awareness of their potentials even in the hands of rightful owners and careful operators. Incidents of serious havoc caused by runaway thieves or irresponsible juveniles in stolen or "borrowed" motor vehicles frequently shock the readers of the daily press. With this background must come a recognition of the probable danger of resulting injury consequent to permitting a motor vehicle to become easily available to an unauthorized person through violation of the statute in question. The percentage of cases of this nature or the incidence of injury done where an independent force has intervened after such violation, however, is not the standard or measure of liability. We are here concerned only with the question as to whether or not this intervening force is without or within the range of reasonable anticipation and probability.

Justice requires that we do more than honor and respect prior judicial decisions, for if only these two considerations were our guideposts then the path of jurisprudence would never change irrespective of a changing world. Cases similar in facts to the one at bar have reached the higher

courts of this State, of Massachusetts, Minnesota, Indiana, Michigan, Louisiana, New York, New Jersey, and the District of Columbia, wherein experienced and learned lawyers and judges have differed on this question of probable cause. That reasonable minds can and have disagreed on this question cannot be denied. With these incontrovertible facts before us, we recall the reasoning of Justice Cardozo, that the range of reasonable apprehension is at times for the court, and at times, if varying inferences are possible, a question for the jury. The possibility of varying inferences in a case such as the one before us has been amply demonstrated. Certain facts may exist which a jury of reasonable men would consider as determinative in leading to a conclusion of liability or nonliability, all according to the circumstances of the particular case. Assume a defendant violates the statute in question, yet before leaving the vehicle he secures the doors and windows. Or assume he has a reliable or an unreliable person nearby watching the vehicle for him. Or assume he leaves his car within view of a police officer who knows defendant and is acquainted with his habit of so leaving his car. Or assume the intervening third party drove the car carefully. Many other varying examples could be constructed which would have different material circumstances. The nature of the community, its population, the elements of time and space in innumerable aspects, may in certain cases be deemed material facts for a jury's consideration.

We are in agreement with the court below in our belief that reasonable men might differ on the question where there were special circumstances surrounding the defendant's violation of the statute which may be the proximate cause of the damage that followed. We do not mean to be understood as holding that given a cause similar to the facts in the *Palsgraf case* we would hold otherwise than in the majority opinion; we do, however, believe that under the circumstances as presented in the case before us we

find no persuasive authority and no impelling reasoning for this court to hold, *as a matter of law,* that no actionable negligence can exist.

Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function. *Bailey* v. *Central Vermont Railway Co.* 319 U.S. 350.

For the foregoing reasons, it is our opinion that the Appellate Court was correct in affirming the judgment of the municipal court of Chicago.

*Judgment affirmed.*

Mr. JUSTICE HERSHEY, dissenting:

The majority opinion is contradictory within itself. It first concludes that section 92 of article XIV of the Uniform Traffic Act (Ill. Rev. Stat. 1953, chap. 95½, par. 189,) is not an antitheft statute, but is, in fact, a public safety measure. Although the opinion fails to answer in specific fashion its question as to what harm the legislature foresaw and attempted to prevent by the passage of this act, it does ultimately determine that the statute was to prevent accidents caused by a thief in stealing the vehicle. This determination is manifest by the majority's adoption of the Appellate Court determination. The majority thus

finds the statute, or at least that part of the statute rendering it unlawful to fail to remove the keys from a parked vehicle, to be an antitheft measure.

The complaint filed by appellee alleged that the thief "obtained possession of the said taxicab or motor vehicle of the Defendant aforesaid, and in an attempt to steal the same and in making his escape after the said theft, ran the said taxicab or motor vehicle against the automobile of the Plaintiff." Appellant moved to strike and dismiss the complaint and stood by his motion. It is entirely impossible to determine from the record how far from the theft scene or how soon after the theft the accident occurred. It is entirely without the bounds of reason to impose liability upon the cab company for an accident occurring at a great distance or a considerable time after the actual theft, or at a time when the thief was no longer in actual flight from the place of his crime.

The majority concludes that all parts of this statute, except that portion referring to the keys, indicate an intention on the part of the legislature to prevent harm to the public by an inadvertent or negligent movement of a parked vehicle, or through its being driven by a young person devoid of experience, judgment, knowledge, or maturity. It finds that the legislature's purpose in relation to those portions of the statute was not to deter theft. However, the majority then concludes that the portion directing the removal of the keys from the vehicle was to prevent the operation of the vehicle and possible public harm by a thief in flight. The slightest experience renders everyone cognizant of the fact that the removal of automobile ignition keys is only a minor deterrent, if any, to the theft of an automobile and a subsequent flight from detection and pursuit. Consequently, it is only reasonable and logical to construe the legislature's intention in the passage of this portion of the statute in the same light as is attributed to the remainder of the section. One can only conclude, therefore,

that the legislature required the removal of the key to prevent a mere negligent or inadvertent starting of the automobile and an ensuing uncontrolled movement thereof. Obviously the legislature could not presume by such legislation to prevent a wilful movement of the vehicle by an unauthorized person. It is generally recognized that one may leave a motor vehicle standing unattended in a public street temporarily, without being guilty of negligence, provided he takes the ordinary precautions of securing it by the appliances with which it is equipped for that purpose, and that if it is thereafter set in motion by the wilful or negligent act of a third person, such wilful or negligent act will be deemed the proximate cause of the accident or injury resulting therefrom and the owner will not be liable. (26 A.L.R. 912.) The majority opinion adopts the minority approach, which is both strained and artificial and which has been overruled in most of those jurisdictions which once adopted it. *Galbraith* v. *Levin,* 323 Mass. 255; *Maggiore* v. *Laundry,* (La.) 150 So. 394; *Anderson* v. *Theisen,* 231 Minn. 369.

It is correctly stated by the majority that the entire statute makes the failure to remove the key *prima facie* evidence of negligence. However, such *prima facie* evidence of negligence is not absolute negligence, and does not of itself create liability. It creates liability only where such negligence is the proximate cause of the injury. It cannot be the proximate cause of the injury where an independent agency intervenes.

This section, not being an antitheft measure, and not making the failure to remove the key an absolute act of negligence, cannot constitute the proximate cause of this injury. But for the intervention of the theft the failure to remove the key could not have caused this injury. Moreover, unless the thief was in immediate flight from the scene of his theft, the act of thievery could not even be a factor contributing to the injury. In the latter case the

failure to remove the key could not have the slightest connection with the subsequent accident and injury.

It is, therefore, impossible under the facts as evidenced by the record, and under the dictates of this statute, to impose liability upon the defendant cab company. The Appellate Court judgment should be reversed.