**Adolph Roth, et al., Plaintiffs-Appellees, v. William Nauman, Defendant-Appellant.**

Gen. No. 51,459.

First District, Third Division.

November 30, 1967.

Joseph A. Bailey and Jerome H. Torshen, of Chicago, for appellant.

Nathan Shavin and Seymour Scheffres, of Chicago (Edward Wolfe, of counsel), for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by defendant from a directed verdict and judgment thereon in favor of the plaintiffs for personal injuries sustained in an automobile accident.

Defendant contends on appeal that the court erred in finding defendant guilty of negligence and plaintiffs free from contributory negligence as a matter of law; that, as a matter of law, defendant was not negligent, and that, as a matter of law, plaintiff Roth was guilty of contributory negligence.

The accident occurred at approximately 5:30 p. m. on June 3, 1959, in the intersection of Cicero and Caldwell Avenues in Chicago. The evidence showed that it was a clear day, the streets were dry and the visibility was good.

Cicero Avenue, at the intersection with Caldwell, has three lanes of traffic in each direction. At the time of the accident northbound traffic was heavy and southbound traffic was light. The speed limit on Cicero at that point is 30 miles per hour.

Plaintiff Roth testified that he was driving a 1954 Oldsmobile in a southerly direction on Cicero in the innermost (farthest easterly) lane. When he reached the intersection here involved he stopped to make a left turn onto Caldwell. It is not clear from the evidence whether he stopped at the north end of the intersection or at the center of Caldwell. He waited there approximately thirty seconds until an opening appeared in the innermost northbound lane. That opening was about fifteen feet wide. Roth started for the opening. A car in that lane stopped and waved him through, so he inched into that space. In the next lane a car stopped and also waved him through. The cars that stopped for him did so almost simultaneously. At that time he could not see what was in the third lane so he inched his way along into that lane where he was hit by defendant's automobile. Roth stated that when he first saw defendant's automobile coming towards him it was about fifteen feet away and he estimated defendant's speed to be between 25 and 30 miles an hour. Roth slammed on his brakes and stayed right there and was hit. He saw no cars moving in defendant's lane from the time he reached the intersection until he saw defendant's automobile.

Plaintiff Pime was a passenger in the Roth automobile and the two men, along with plaintiff Zalinski, were long-time friends. Pime's testimony was similar to that of

46

Roth. He stated that they waited 15 to 20 seconds before beginning the turn. He did not see defendant's automobile before the accident and had no idea how fast it had been going. Upon deposition he had stated that he had seen defendant's car ten or fifteen feet away and thought it was going 25 or 30 miles an hour.

Plaintiff Zalinski testified that the first northbound car to stop for Roth's car was about twenty feet south of them. He stated that the innermost lane stopped first then the middle lane stopped "and then you take your chances on number 3." Roth stopped the car while in the first lane for 5 or 6 seconds while waiting for the second lane to stop. When he got into the third lane he was creeping along about 3 or 4 miles per hour and then came the impact.

Defendant Nauman testified that on the day in question he was driving a 1959 Ford northbound on Cicero. He got into the curb lane about 70 yards south of Caldwell since the other two lanes were filled with cars whereas the third was comparatively empty. There was another car in the curb lane preceding him by approximately 80 yards. He was traveling about 20 miles an hour and when he was approximately 15–20 feet from the point of impact he saw the first car in the middle lane stop abruptly and then saw plaintiffs' car coming into his lane. He applied his brakes and tried to swerve before the impact occurred.

A disinterested witness, Richard Whaler, testified that he was stopped on Caldwell waiting to turn onto Cicero when the accident occurred. He stated that plaintiffs' automobile had made an accelerated start into a momentary break in traffic and that the center and middle lanes opened at the same time allowing plaintiffs' automobile to enter. He estimated defendant's speed at 20 to 25 miles an hour. He said that defendant's lane was the only one freely moving northerly at the time. Defendant was passing cars in the middle lane as he came up to

■■■■■■■

Caldwell. Plaintiffs' car was not moving slowly as it entered the curb lane of northbound traffic.

At the close of all the evidence the court granted plaintiffs' motion for a directed verdict and the case went to the jury on the issue of damages only. Verdicts aggregating $1,310, were returned. Defendant appealed.

■■ Defendant first contends that the issues of negligence and contributory negligence should not have been resolved against him as a matter of law. A directed verdict is proper if all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504.

Defendant refers us to the statute regarding left turns in an intersection which reads in part as follows:

> "The driver of a vehicle within an intersection intending to turn to the left shall yeild (sic) the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal . . . may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn." (Ill Rev Stats 1959, c 95½, par 166.)

Defendant asserts that plaintiff, Roth, did not exercise due care in making his turn and the presence of defendant's car constituted an immediate hazard within the meaning of the statute and, furthermore, that defendant himself did only what he was supposed to do and at all times acted reasonably and with due care. Plaintiffs, on the other hand, assert that once their car was in the intersection and making the turn that defendant was required to yield the right-of-way, and that defendant was

driving too fast when he knew or should have known that the cars in the next lanes were stopped. The part of the statute requiring oncoming traffic to yield to a vehicle that has begun a left turn would assume a condition wherein the oncoming drivers could see the turning car in time to avoid a collision. Furthermore, the statute does not encompass a situation where a driver accelerates from a stopped position to make a left turn and cut into a 15-foot break in heavy traffic in so doing. From the evidence in this case a jury could conclude that plaintiff Roth was guilty of contributory negligence as to his claim and that defendant was not guilty of negligence as to any of the plaintiffs.

█ █ As can be seen from the contentions set forth in the above paragraph these were contested issues of fact involving the due care or lack thereof on the part of both drivers. Conflicting evidence was presented regarding the speed of both automobiles. It appears to us that reasonable men could differ in their evaluations of the acts of the drivers. The court in Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74, discussed the taking by the court of questions of negligence from the jury and stated on page 84:

> "Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leav-

ing such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function. Bailey v. Central Vermont Railway Co. 319 US 350."

The above reasoning applies equally well to the question of contributory negligence. We feel that these were matters for the jury's determination and that it was error for the court to decide them as a matter of law and direct a verdict in favor of plaintiffs.

█ It should be noted that plaintiffs contend that any finding by this court of contributory negligence on the part of Roth would not be imputed to the other plaintiffs and therefore the judgments as to them should be allowed to stand. Under the authority of Bridgewater v. Wagoner, 28 Ill App2d 201, 170 NE2d 785, we agree that contributory negligence of the driver, Roth, in this case would not be imputed to his passengers. However, the judgments in this case are based on a finding by the court of negligence of the defendant as a matter of law, and, in finding that that issue should have been submitted to the jury, we cannot uphold the judgments in favor of any of the plaintiffs.

Defendant also contends that this court should find him not guilty of negligence and Roth guilty of contributory negligence as a matter of law. In view of our conclusion that the evidence presented questions of fact for the jury on these matters we cannot agree with defendant's position.

For the foregoing reasons the judgments in favor of plaintiffs are reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.