JILL PLACKO, a Minor, by Darrell Placko, her Father and Next Friend, Plaintiff-Appellant, *v.* WAYNE L. FAWVER, Defendant-Appellee.

Third District   No. 77-336

Opinion filed December 27, 1977.

Lester S. Weinstine, of Morrison, for appellant.

Ole Bly Pace, III, of Ward, Ward, Castendyck, Murray & Pace, of Sterling, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court: .

Plaintiff, Jill Placko, commenced this action in the circuit court of Whiteside County against defendant, Wayne Fawver, to recover damages incurred when the plaintiff underwent a series of rabies shots and suffered a severe reaction to them. Upon defendant's motion, the court entered summary judgment for defendant and plaintiff appealed.

Certain facts are essentially uncontroverted. At the time of her injury, plaintiff was three years old. On August 1, 1973, plaintiff was playing in the backyard of her home when a stray cat came into the backyard. Plaintiff was bitten by the cat while she was holding it. The wound on plaintiff's index finger was slight, but it was sufficient to break the skin. When plaintiff's mother noticed that the cat appeared to be ill, she became concerned over the possibility of the cat transmitting an infectious disease to her daughter and the cat was therefore taken to the North Locust Animal Hospital.

Defendant is a doctor of veterinary medicine engaged in private practice at the North Locust Animal Hospital. After plaintiff's mother had brought the cat to the hospital, defendant examined the cat and formed the opinion that the cat suffered from feline distemper, a highly transmissible animal disease (though not transmissible to humans). The defendant then discussed with plaintiff's mother the usual procedures undertaken to insure that the cat was not a rabies carrier, which requires confining the animal for a 10-day period of observation. In the event a suspected rabies carrier dies during the 10-day period of confinement, the animal's head must be removed and sent to the State lab for a rabies test. At the conclusion of their discussion, plaintiff's mother left the cat with the defendant. At no time during his conversation with Mrs. Placko did defendant refuse to confine the cat or refuse to accept the cat for observation.

The North Locust Animal Hospital does not have isolation facilities to confine an animal with a highly transmissible disease. Concerned that confinement of the cat at the animal hospital would infect other animals, defendant arranged to have the cat placed in the Rock Falls Area Pound, which does have isolation facilities. After first discussing the problem with Dr. Sabaitis, Whiteside County veterinarian and rabies control officer, defendant telephoned Earl Howard, pound master of the Rock Falls Pound, and arranged to have Howard pick up the cat at the hospital. Howard's sole occupation is that of pound master for which he receives a set monthly salary from a joint enterprise composed of four governmental units. The Rock Falls pound is owned by that same joint enterprise.

Certain critical aspects of the phone conversation between defendant and Howard are disputed.

In a discovery deposition, defendant indicated that he informed Howard a rabies case was involved, requested Howard to isolate the animal because of the distemper problem and that should the animal die, the hospital would have to have the animal back for transmission of the head to the State laboratory for a rabies test. Howard's discovery deposition reveals that he was only told that the cat was "sick" and that he was to call the hospital in the event the animal died. When Howard picked up the cat at the hospital later in the same day (August 1, 1973) he did not see or talk to any of the veterinarians at the hospital, but saw only a young attendant. No further instructions were given Howard at this time, nor were any papers or receipts exchanged between the hospital and Howard. The cat was then placed in the pound.

When Howard arrived at the Rock Falls pound at approximately 11 a.m. on the next day, August 2, 1973, he found the cat dead. Shortly after 12 noon, Howard called the North Locust Animal Hospital and reached only an answering service. It appears the hospital is customarily closed between noon and 2 p.m. Howard told the answering service that the cat had died and the service said they would have the hospital contact Howard. Dr. Fawver is normally not in the hospital on Thursdays. Dr. Fawver testified that he was told that an employee of the hospital and Dr. Seavey, his partner, had tried to reach Howard on August 2, but without success.

Howard testified he did not leave the pound anytime during the afternoon of August 2, until about 4:30 p.m. He stated that he did not leave at any time for lunch and that he would have answered any phone call between 11 a.m. and 4:30 p.m. on August 2.

On August 3, when Howard arrived at the pound at 7 a.m., the smell from the dead cat was so severe that he placed the cat in a plastic bag and placed the bag in a garbage truck headed for a nearby landfill. Later on the same day Howard received a phone call from Dr. Sabaitis and was told to take the cat to the North Locust Animal Hospital so that the head could be removed and sent away for a rabies test. This was the first time Howard claims he was informed about any possible rabies condition. Howard testified he was never informed by anyone at the North Street Animal Hospital on either August 1, 2 or 3 that the cat had bitten a child. Howard informed Sabaitis that he had disposed of the cat as previously indicated.

Plaintiff's mother was notified by Dr. Sabaitis that the cat was lost. After first discussing the entire matter with a physician, plaintiff's parents decided to have plaintiff receive the series of injections for rabies. After 11 of the 14 shots had been given, the shots were discontinued because of

plaintiff's severe reaction to the injections. All of the foregoing facts were elicited in discovery depositions or affidavits. Thereafter, suit was brought to recover for the injuries that plaintiff incurred from the shots and the reaction. Defendant filed a motion for summary judgment based upon discovery depositions and the motion was granted. In its order allowing the motion, the court found that (1) there is no genuine issue as to any material fact in the case, (2) the pound master was not an agent or employee of the defendant, (3) the defendant was in compliance with the accepted practice of Whiteside County set up by the rabies control commissioner, (4) there was no negligence on the part of defendant which could be the proximate cause of any condition claimed by the plaintiff. It is from this order granting summary judgment for defendant that plaintiff appeals. We reverse.

■▮ Before determining whether material facts are undisputed and hence the propriety of summary judgment, it is essential to ascertain exactly what is in issue. In a negligence action such as this the material issues include concepts of duty and its breach. We believe that under the circumstances presented here, defendant was under a duty to inform Howard that the cat was a possible rabies carrier and was being confined for purposes of observation to determine the existence or nonexistence of rabies. Such information would alert Howard to the gravity of the situation and the need to exercise care in confining the animal. Furthermore, defendant had the duty to instruct Howard as to what procedures would be necessary if the cat died during confinement. When defendant intrusted the care of a possible rabies carrier to another individual, he incurred an affirmative obligation to make certain that the individual was aware of the circumstances surrounding the confinement of the possible rabies carrier and that the individual understood what was expected of him. Custodianship of a possible rabies carrier without knowledge or understanding of the situation is haphazard at best. While no cases have been found involving an analogous factual situation, the failure of a physician to instruct an attendant to a patient has formed the basis for liability. (See Annot., 63 A.L.R. 3d 1023 (1975). See also *Ohligschlager v. Proctor Community Hospital,* 55 Ill. 2d 411, 303 N.E.2d 392.) We believe that if defendant failed to properly instruct Howard concerning the confinement and disposition of the cat, defendant would have breached his duty to plaintiff. Having ascertained what issues are involved, we must next determine if the court erred in granting defendant's motion for summary judgment.

Summary judgment under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57) is proper only where the facts on any material issue are undisputed. (*LaMonte v. City of Belleville,* 41 Ill. App. 3d 697,

355 N.E.2d 70.) A motion for summary judgment may be supported by discovery depositions. So long as the evidentiary materials supporting the motion for summary judgment reveals facts and inferences which would entitle the party opposing the motion to relief, summary judgment is improper. (*Schmidt v. Massey-Ferguson Co.*, 96 Ill. App. 2d 368, 239 N.E.2d 311.) We believe there were material facts in dispute, which, if resolved by the jury in plaintiff's favor, would support a verdict for plaintiff.

■■ The crucial disputed issue involves the communications between defendant and Earl Howard, the pound master. Howard claims he was informed only that the cat was sick and was only instructed to call the defendant should the cat die. According to Howard, he was not instructed by defendant that if the cat died the head would have to be removed and sent to the State lab for a rabies test. Howard claims that he was not informed that the cat was being confined for observation for rabies, nor was he told by defendant that the cat had bitten a child. Defendant's affidavits and deposition refutes most if not all of the foregoing. He claims that he specifically told Howard that this was a rabies case and instructed Howard that if the cat died, the carcass would have to be returned to defendant so that the head could be removed and delivered to the State laboratory for a rabies test. It is readily apparent that the nature and extent of the information and instructions defendant gave to Howard concerning the confinement of the cat and the possible existence of rabies are contradictory. The affidavit and depositions contain sufficient facts which, if believed by the jury, would entitle plaintiff to judgment in her favor. Since the facts on a material issue are disputed, the trial court erred in granting summary judgment for defendant.

■■ Two further issues have been raised which deserve brief attention. In an affirmative defense, defendant contends that the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 through par. 10—101) is applicable to him. His argument is essentially that rabies control is exclusively a governmental function and because defendant was engaged in rabies control, he is a governmental employee within the meaning of the Tort Immunity Act referred to above. He supports his argument by reference to various sections of the Rabies Control Act (Ill. Rev. Stat. 1971, ch. 8, par. 23e through par. 23x) which impose certain responsibilities on veterinarians. We can find no merit in defendant's contention. While defendant's argument is not lacking in novelty, we fail to find any authority to support it, nor has any been cited by defendant. A statute which imposes on an individual certain obligations related to the exercise of the police powers of government has little if any bearing upon the

question of whether or not that individual is a governmental employee. Such a question must be resolved by reference to more traditional concepts of employment.

■■ Plaintiff contends that summary judgment was improper because the pound master was a special agent of the defendant and defendant is therefore responsible for his negligent acts. We find plaintiff's argument unpersuasive. Howard's sole occupation was being pound master, for which he received a set salary from a joint enterprise established by four governmental units. The facilities for the pound were also owned by that joint enterprise. Furthermore, defendant exercised no control whatsoever over Howard's actions or conduct. We find no agency relationship existed between defendant and Howard.

■■ We also believe the trial court erred in its finding that no proximate cause existed between defendant's action and plaintiff's injury. Suffice it to say that based upon the facts revealed by the affidavits and depositions in support of defendant's motion for summary judgment, the issue of proximate cause was for the jury to decide. *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74.

Accordingly, the judgment of the circuit court of Whiteside County is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Judgment reversed and remanded.

BARRY, P. J., and SCOTT, J., concur.