KALEN MACK, Special Adm'r of the Estate of Penelope Brettschneider, Deceased, *et al.*, Plaintiffs-Appellants, v. FORD MOTOR COMPANY *et al.*, Defendants-Appellees (Greyhound Lines, Inc., *et al.*, Defendants).

First District (2nd Division)   No. 1—94—4231

Opinion filed June 28, 1996.—Rehearing denied September 11, 1996.

---

Michael W. Rathsack, of Chicago (Michael P. Cogan, Mark E. McNabola, and Michael W. Rathsack, of counsel), for appellants.

Baker & McKenzie, of Chicago (Michael A. Pollard, Richard B. Foster, and Susan M. Narimatsu, of counsel), for appellee Ford Motor Company.

Phillips, Healy & Allen, of Chicago (Andrew P. Allen, of counsel), for appellee Wil-Shore Motor Sales, Inc.

JUSTICE SCARIANO delivered the opinion of the court:

Cynthia Brettschneider, one of the plaintiffs in this case, testified that when she purchased a 1987 Ford Mustang from defendant Wil-Shore Motor Sales, Inc., Wil-Shore did not mention that the automobile was equipped with a fuel-inertia switch, nor did it advise her that the ignition could become inoperative upon a collision. Although she had read sections of the owner's manual, she did not recall reading anything about a fuel inertia switch; she did, however, admit that it was possible that she had read the section mentioning the switch but did not remember. Before January 1991, both she and her husband, Brian Brettschneider, had never heard of the Mustang's having a fuel inertia switch.

The owner's manual furnished to Cynthia upon sale of the vehicle contained a section entitled "Starting and Operating Your Vehicle." Within this section, on page 75 of the manual, appears a heading: "If Your Vehicle Cranks But Does Not Start," and the "fuel pump shut-off switch" is then discussed as follows:

"This vehicle is also equipped with a switch located in the luggage compartment/trunk which shuts off the electric fuel pump and fuel flow to the engine in the event of a major collision. Once the switch is triggered, the white reset lever is in the up position and the electric fuel pump is shut off. To restart the vehicle the switch must be manually reset."

Thereafter, the manual instructs the owner how to reset the switch.

On January 5, 1991, the Brettschneider family was travelling in a three-car caravan on Interstate 55. Ralph, the father, led in a rented truck; Brian followed in the 1987 Mustang; and Penny, the deceased, and her mother, Cynthia, were last in a van.

It was snowing, and as Brian switched lanes to pass a salt truck, the Mustang's rear wheels lost traction on the slippery highway and the car began to spin counterclockwise. The van hit the rear of the Mustang as it was spinning. Cynthia testified that it "wasn't much of" a collision. Brian and Cynthia testified that the Mustang came to rest in the right lane; Ralph claimed that it stopped on the right shoulder. Penny stopped farther along the road on the left shoulder. Brian turned on the Mustang's hazard lights and tried to start the engine several times, but was unable to do so.

Brian began trying to push the Mustang toward the right shoulder, but was having difficulty because it was too heavy and because he could not get enough traction on the icy road. He testified that with Penny's help, the car was moved entirely onto the shoulder.

A Greyhound bus and a Camaro were travelling in the right lane toward the stopped Brettschneider vehicles; defendant Rhonda King was driving the Camaro, and defendant Lester Deanes was following in the bus. When Deanes saw the taillights of the three stopped vehicles, a person crossing the highway, and "flashers," he steered the bus into the left lane. He testified that the Mustang was in the right lane, and the truck and van were partially in the left lane and partially on the left shoulder. He did not realize anything was wrong until he was between 1 and 1 1/2 blocks from the vehicles. Deanes further testified that "[a]ll of the sudden [sic]," the Camaro "slammed the brakes," and in attempting to avoid it, Deanes drove onto the left shoulder, downshifted, but "went into a slide," and hit it.

King testified that the first thing she noticed were hazard lights in the left lane, which she thought belonged to another vehicle travel-

ling with its hazards lights on due to the weather conditions. She also saw lights flashing in the right lane ahead of her, which she thought was a car changing lanes. Todd Schmitgall, a passenger in the Camaro, placed the Mustang half in the right lane and half on the shoulder.

When King realized that the cars were not moving, she started to "apply the brakes a little bit," causing the Camaro to begin to skid into the left lane. She tried to head toward the grassy median, but was struck on the left front quarter panel by the Greyhound bus, which resulted in her losing control of her car as it began spinning to the right.

When Ralph saw the oncoming headlights of an out-of-control car and realized that it was not slowing down, he yelled a warning to his children, who were near the rear of the Mustang. Brian dove to the side and Penny ran from the shoulder and into a "gully." Testimony differs as to whether the Camaro actually hit the Mustang, but it ultimately passed to the right of it and into the gully. When Ralph approached the Camaro, he saw that Penny had been crushed underneath it. Three to five minutes had elapsed between the initial collision disabling the Mustang and Penny's being struck.

Plaintiffs' third amended complaint included, *inter alia*, products liability and negligence counts against Ford, relating to its design and location of the fuel cut-off switch, and against both Ford and Wil-Shore for their failure to warn of the existence and location of the fuel shut-off switch and their failure to instruct the purchaser on how to disengage it.

The trial judge granted summary judgment to both Ford and Wil-Shore, holding that even "accepting" plaintiffs' charges of negligence as to both Ford and Wil-Shore:

"I think there are several independent and intervening causes that caused this tragic death to the deceased young lady.

Here there is the minor accident that first happened. That is something I don't think that Ford could foresee or the results that would happen thereafter.

The car is pushed partially off the side of the road, I think, if you look at Ms. King's deposition on that.

Then, the other two vehicles approach. There are also the intervening weather conditions which were terrible for driving. I think there was sleet or freezing rain as described in Rhonda King's deposition.

And then along came two other vehicles, the vehicle of Ms. King and the vehicle of the Greyhound Bus Company driven by Mr. Deanes.

I think there is some interplay between those vehicles or Ms. King starts to slide, and then her car, one way or another, comes in contact with Penelope Brettschneider in a way that tragically kills her.

I think that here the injuries and the death to the plaintiff could well have happened with or without the fuel shut-off device. Plaintiff's car could have pulled over to the side of the road for any number of reasons.

Even if it had no fuel shut-off device, because of the weather and because of the other vehicles, they could have tragically lost a member of their family and were hurt regardless of this fuel shut-off device.

I see this, as the cases call it, a condition and not a cause. It may not even be a condition, as I said."

Plaintiffs claim that their actions against Ford and Wil-Shore present genuine issues of material fact requiring reversal of the trial court's grant of summary judgment.

The trial court clearly assumed the existence of duty on the part of both Ford and Wil-Shore, for it proceeded directly to the consideration of, and ruling on, proximate cause in awarding judgment in this case; and surely Ford had the duty "to use reasonable care in the design and manufacture of its product, bearing in mind that the intended and actual use of automobiles results in collisions" (see *Buehler v. Whalen*, 70 Ill. 2d 51, 61, 374 N.E.2d 460, 464-65 (1978) (noting that cases so holding are "legion")); and both Ford and Wil-Shore had a duty to warn of the existence of the fuel cut-off switch (see *Fuller v. Fend-All Co.*, 70 Ill. App. 3d 634, 388 N.E.2d 964 (1979), quoting *Weiss v. Rockwell Manufacturing Co.*, 9 Ill. App. 3d 906, 912, 293 N.E.2d 375, 379 (1973) (holding that "[a] duty to warn will be found 'where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given' ")).

This court reviews summary judgment rulings *de novo*. *Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467, 634 N.E.2d 749, 750 (1994). Summary judgment will be granted only if the pleadings, affidavits, depositions and admissions on file reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law; and the affidavits and depositions are to be construed strictly against the moving party. *Murphy v. Urso*, 88 Ill. 2d 444, 464, 430 N.E.2d 1079, 1088 (1981). Where different inferences may be fairly drawn from facts not in dispute, a triable issue exists and summary judgment should not be entered. *Patel v. Burke*, 102 Ill. App. 3d 554, 557, 430 N.E.2d 162, 164 (1981). Because summary judgment is such a drastic method of disposing of a case, it should not be employed

unless the right of the moving party is free from doubt. *Murphy*, 88 Ill. 2d at 464, 430 N.E.2d at 1088.

■ The substantive principles of law relevant to this case are well defined, well established, and universally applicable: Proximate cause is ordinarily a question for the jury to decide. *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 395, 356 N.E.2d 93, 100 (1976); *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 675-76, 646 N.E.2d 1305, 1308 (1995) (reversing the trial court's grant of summary judgment to defendant on the ground that an independent intervening cause was responsible for plaintiff's injury). The proximate cause of an injury can become a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. *Zerbenski v. Tagliarino*, 67 Ill. App. 3d 166, 172, 384 N.E.2d 753, 756 (1978).

There may be more than one proximate cause of an injury. *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 17, 413 N.E.2d 1242, 1246 (1980). Moreover, a defendant may be held liable even if his negligence is not the sole proximate cause of the plaintiff's injuries, so long as his conduct contributed in whole or in part to the injury. *Pell v. Victor J. Andrew High School*, 123 Ill. App. 3d 423, 430, 462 N.E.2d 858, 863 (1984). See also *Lillie v. Thompson*, 332 U.S. 459, 92 L. Ed. 73, 68 S. Ct. 140 (1947) (reversing the district court's finding that there was no causal connection between defendant's failure to light and guard the premises and plaintiff's injury, and remanding for a jury determination of whether defendant's negligence at least partly caused plaintiff's injuries).

■ The negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability. *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 15, 413 N.E.2d 1242, 1245 (1980).

To escape liability, defendant must demonstrate that the intervening event was unforeseeable as a matter of law. *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 395, 356 N.E.2d 93, 100 (1976). A foreseeable intervening force does not break the chain of legal causation. *Felty v. New Berlin Transit, Inc.*, 71 Ill. 2d 126, 131, 374 N.E.2d 203, 205 (1978); *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 84, 117 N.E.2d 74, 80 (1954). Furthermore, the precise nature of the intervening cause need not be foreseen (*Felty*, 71 Ill. 2d at 131, 374 N.E.2d at 205), and where varying inferences are possible, foreseeability is a question for the jury (*Ney*, 2 Ill. 2d at 84, 117 N.E.2d at 80). Incisively on point is *Wright v. General Motors Corp.*, 479 F.2d 52, 53 (7th Cir. 1973), apply-

ing Illinois law and stating that " '[w]here *** reasonable men might differ, the issue of proximate causation should *never* be determined as a matter of law' " (emphasis added), quoting *Ney*, 2 Ill. 2d at 84, 117 N.E.2d at 80. We note also that the Illinois approach comports with the view of the Restatement. Restatement (Second) of Torts §§ 435, 440 through 447 (1965).

█ In light of the foregoing principles, we cannot agree with the trial judge's holding that multiple "unforeseeable" intervening forces shielded Ford and Wil-Shore as a matter of law from liability on plaintiffs' actions against them. See *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 617 N.E.2d 1346 (1993) (reversing circuit court's grant of summary judgment because second defendant's erratic driving could not be considered an intervening efficient cause as a matter of law where there existed a triable issue of fact as to whether the first defendant's leaving a truck on the shoulder during adverse weather conditions could constitute a proximate cause of plaintiff's injuries); *Bentley*, 83 Ill. 2d 10, 413 N.E.2d 1242 (finding that the defendant township could not escape liability for its failure to maintain the visibility of a stop sign on the ground that the resulting intersection collision was an independent intervening cause); *Wright*, 479 F.2d 52 (reversing the district court's finding that General Motors' conduct was not the proximate cause of plaintiff's injuries as a matter of law where plaintiff was struck by an oncoming vehicle while attempting to make emergency repairs when his car became disabled because of a defective transmission, and remanding the factual question of proximate cause for trial); *Zerbenski v. Tagliarino*, 67 Ill. App. 3d 166, 384 N.E.2d 753, 756 (1978) (finding that one defendant's having crossed the center line could not be found, as a matter of law, to be an independent intervening cause of plaintiff's injuries where he did so after striking another defendant's vehicle which had suddenly stopped in front of him; whether that defendant's having suddenly stopped was a negligent proximate cause of her injuries was a jury question).

Nor can we accept the trial court's finding that the collision disabling the 1987 Mustang was unforeseeable as a matter of law to Ford, for it must be deemed to have designed the vehicle in anticipation of the very fact situation with which we are presented here: the car becomes disabled after a collision that leaves its driver unable to restart it, and he is required to exit the vehicle on a highway and open the trunk before he can even begin to restart it. See *Galliher v. Holloway*, 130 Ill. App. 3d 628, 632, 474 N.E.2d 797, 801 (1985) (finding that whether defendant's car's continued presence on the highway after a "sudden mechanical failure" was the proximate cause of

injuries when it was subsequently struck by another vehicle was properly a question for the jury). The Ford owner's manual, which we quote earlier in this opinion, confirms these requirements. Indeed, the manual anticipates a *major* collision, while here, the undisputed testimony is that the collision which triggered this tragic event was but a *minor* one. See *Buehler v. Whalen*, 70 Ill. 2d 51, 61, 374 N.E.2d 460, 464-65 (1977) (stating that "the intended and actual use of automobiles results in collisions"). Moreover, Ford's manual does not make it a condition that the collision and the consequent shutoff of fuel occur only in favorable weather conditions, or that the other motorists who may be on the highway when and where the shutoff occurs be safe driver medalists. See *Trevino v. Flash Cab Co.*, 272 Ill. App. 3d 1022, 1030, 651 N.E.2d 723, 729 (1995) (reversing the trial court's granting of defendant's motion for summary judgment because "the question of whether the accumulation of ice and snow upon which plaintiff fell acted as an intervening cause breaking the causal connection between her wrongful ejection from the defendants' cab and her subsequent injury is one of fact"), *appeal denied*, 163 Ill. 2d 590, 657 N.E.2d 640 (1995); *Roeseke v. Pryor*, 152 Ill. App. 3d 771, 779, 504 N.E.2d 927 (1987) (noting that where defendant's initial collision "set the stage for the multiple-vehicle pileup that followed," and where the accident occurred at night on a highway with a 55-mile-per-hour speed limit, it was foreseeable that other vehicles would become involved in the mishap). Nor can Wil-Shore be permitted to argue that it could not foresee the switch's functioning as intended, since it does not dispute that it was aware of its presence in the 1987 Mustang and how it operated. To relieve Ford and Wil-Shore of responsibility here would expand the meaning of superseding cause beyond that contemplated by all of the authorities we have cited. *Bentley*, 83 Ill. 2d 10, 413 N.E.2d 1242.

The trial court also stated, as noted above, that "[p]laintiff's car could have pulled over to the side of the road for any number of reasons. Even if it had no fuel shut-off device, because of the weather and because of the other vehicles," plaintiffs would have suffered injury "regardless of this fuel shut-off device. I see this, as the cases call it, a condition and not a cause. It may not even be a condition, as I said."

Where a defendant's negligence does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the

injury, and itself becomes the proximate or immediate cause. *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665 (1942) (finding uninsulated and sagging wires were only a condition and the negligent operation of a crane brought it in contact with the wires and was the proximate cause of injuries).

Ford and Wil-Shore contend that this case is similar to the facts in *Quintana*, wherein the first division of this court affirmed the trial court's granting the City of Chicago's summary judgment motion because it felt that inoperative traffic lights "were, at worst, a condition that the city permitted" at an intersection where vehicles coming from opposite directions collided. *Quintana v. City of Chicago*, 230 Ill. App. 3d 1032, 1037, 596 N.E.2d 128, 131 (1992), *appeal denied*, 146 Ill. 2d 651, 602 N.E.2d 475 (1992). The court further reasoned that the fact that an accident had occurred at that intersection established that at least one of the two drivers must have failed to comply with a statute requiring him to yield to the other, and that such failure was the proximate cause of the accident as a matter of law. *Quintana*, 230 Ill. App. 3d at 1037, 596 N.E.2d at 131.

Ford submits that both the Greyhound and the Camaro had a legal obligation to drive at a speed that was reasonable for highway and weather conditions and to avoid colliding with other vehicles, citing section 11—601 of the Illinois Vehicle Code (625 ILCS 5/11—601 (West 1992)). However, what Ford would overlook is that whether either or both defendants were driving too fast for conditions and whether each should have avoided colliding with the other vehicle are factual issues of negligence properly within the province of the jury to decide. *Pace v. McClow*, 119 Ill. App. 3d 419, 424, 458 N.E.2d 4, 9-10 (1983).

Moreover, the law is clear that conduct does not become an unforeseeable intervening cause solely because it violates the law. See *Ney*, 2 Ill. 2d 74, 117 N.E.2d 74. In *Bentley*, as noted above, the defendant township was not permitted to escape liability for its failure to maintain the visibility of a stop sign by contending that the resulting intersection collision was an independent intervening cause. "[I]f the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability." *Bentley*, 83 Ill. 2d at 15-16, 413 N.E.2d at 1245, citing Prosser, Torts § 44, at 272-74 (4th ed. 1971).

We reject Ford's and Wil-Shore's contentions and refuse to find as a matter of law that the disabled Mustang could have been only a condition. See *Young v. Gateway Transportation Co.*, 26 Ill. App. 3d 864, 326 N.E.2d 222 (1975) (refusing to find as a matter of law that defendant's having left his vehicle in a moving lane of traffic at night

was merely a condition rather than a proximate cause of plaintiff's injuries); *Felty v. New Berlin Transit, Inc.*, 71 Ill. 2d 126, 374 N.E.2d 203 (1978) (finding that whether one defendant's alleged negligence was a condition or a cause was a question for the jury); *Ray v. Cock Robin, Inc.*, 57 Ill. 2d 19, 310 N.E.2d 9 (1974) (same).

In this case, Ford's and Wil-Shore's alleged conduct was more than a mere condition. It not only placed Penny and the other members of her family in a position of danger, but the presence of the stopped Brettschneider vehicles caused King's actions which ultimately led to Penny's death. See *Romano v. Bittner*, 157 Ill. App. 3d 15, 510 N.E.2d 924 (1987) (finding that the failure to provide appropriate traffic controls or warnings was at least partially responsible for the resulting confusion of two drivers as to which of them had the right-of-way and therefore upholding the jury's conclusion that it was a proximate cause of the injury, rather than merely a condition). This further distinguishes the instant case from those advanced by Ford, wherein a defendant merely created a condition that did not affirmatively cause a second defendant's negligence or contribute to plaintiff's injury. See, *e.g.*, *Thompson v. County of Cook*, 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294 (1993) (finding that a county's alleged negligence in failing to maintain adequate signs at a curve where an accident occurred was merely a condition; a motorist's actions in driving while drunk, speeding, eluding police and disregarding traffic signs were the sole proximate cause of the accident); *Boylan v. Martindale*, 103 Ill. App. 3d 335, 343, 431 N.E.2d 62, 68 (1982) (affirming the trial court's granting of summary judgment because the alleged failure to clear trees and bushes from an area near an intersection "was not a contributing factor to the injury"; the city, as a matter of law could not have foreseen the intervening negligence of drivers as a result thereof where a traffic signal was present and testimony established that the stoplight was not obstructed). In sum, employment of the cause versus condition analysis to the factual circumstances of this case, as Justice Holmes characterized it in another context, is like churning the void to make cheese.

We therefore reverse the trial judge's adoption of Ford's and Wil-Shore's disclaimers of responsibility as a matter of law and his assigning sole proximate cause to King's and Deanes' commissions or omissions in dealing with a situation that plaintiffs allege to have been created by the negligence of all defendants. See *Bentley*, 83 Ill. 2d at 15, 413 N.E.2d at 1245.

For all of the foregoing reasons, we hold that plaintiffs are entitled to present their actions against all defendants to a jury. Accordingly, the judgment of the trial court is reversed and this case is

remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

HARTMAN, P.J., and BURKE, J., concur.